IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs July 21, 2009

## ROBERT D. MENDENHALL v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Rutherford County**
**No. 61258    Allen W. Wallace, Judge**

_____

**No. M2008-02271-CCA-R3-PC - Filed February 24, 2010**

_____

On February 1, 2007, Petitioner, Robert D. Mendenhall, pled guilty in Rutherford County to thirteen counts of the unlawful sale of unregistered securities, theft over $60,000 and theft over $1,000.  He agreed to a sentence of twenty years pursuant to his plea agreement. Petitioner filed a petition for post-conviction relief asserting that he had been afforded ineffective assistance of counsel and that his plea was entered involuntarily and unintelligently based upon the ineffective assistance of counsel.  After holding an evidentiary hearing, the post-conviction court found that Petitioner had been afforded effective assistance of counsel and had entered his plea voluntarily.  Therefore, the post-conviction court denied the petition.  On appeal, Petitioner argues that the post-conviction court erred in denying his petition.  After a thorough review of the record, we conclude that the evidence presented at the evidentiary hearing does not preponderate against the findings of the post-conviction court.  Therefore, we affirm the denial of the petition for post-conviction relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which THOMAS T. WOODALL and ROBERT W. WEDEMEYER, JJ., joined.

Gerald L. Melton, District Public Defender, Murfreesboro, Tennessee, for the appellant, Robert D. Mendenhall.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel West Harmon, Assistant Attorney General; William C. Whitesell, Jr., District Attorney General, and Thomas Parkerson, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## *Factual Background*

According to his petition filed in Rutherford County, on February 1, 2007, Petitioner pled guilty to a total of thirteen counts of the unlawful sale of unregistered securities, theft over $60,000 and theft over $1,000. Pursuant to the guilty plea, Petitioner agreed to a twenty-year sentence from Rutherford County which was to run concurrently to a forty-year sentence from Davidson County based on a guilty plea in that county. On January 17, 2008, Petitioner filed a petition for post-conviction relief in which he argued that his guilty plea was not entered knowingly, voluntarily, and intelligently and that he was afforded ineffective assistance of counsel.

On August 21, 2008, the post-conviction court held an evidentiary hearing on the petition. Trial counsel testified at the evidentiary hearing. Trial counsel represented Petitioner in Rutherford County and Davidson County on charges relating to securities fraud and theft. A separate attorney represented Petitioner in Davidson County on his solicitation for murder charges. Trial counsel stated that he had never tried a securities case before, and he made a considerable effort to familiarize himself with the law in that area. At the time he agreed to represent Petitioner, trial counsel had recently left the public defender's office to go into private practice. For this reason, trial counsel had a light caseload and believed that he would have considerable time to devote to Petitioner's case. He spoke with Petitioner dozens of times regarding the charges.

Trial counsel recalled receiving several boxes of documents which Petitioner contended proved that he had not violated the law. Trial counsel would go through the documents but rarely found any documents that would have been helpful to Petitioner's defense. The documents in the boxes were not organized in any particular manner. In addition, Petitioner never provided several documents about which he had discussed with trial counsel. Every document that Petitioner provided to trial counsel, trial counsel analyzed.

Trial counsel recalled speaking with Petitioner as to whether he willfully violated securities law in selling the instruments in question. Petitioner told trial counsel that he believed that he was exempt from the filing regulations because of the nature of the instruments and the nature of the investors whom he approached. After completing his research, trial counsel concluded that the securities being sold by Petitioner did not qualify for the exemption under securities law. In addition, trial counsel stated that he realized that an individual making a sale to an accredited investor would also be exempt from the law. However, only two of the three victims would have been considered accredited. The two

victims who would have been considered accredited were a married couple. Trial counsel stated that there was a document purporting to be legal advice to the sellers of the instruments, but he did not recall that it was addressed specifically to Petitioner. This document prompted trial counsel to research whether a seller could rely upon a lawyer's opinion for a defense from the charges. When discussing the willfulness requirement, trial counsel stated the following:

> [T]he issue as I see it wasn't whether the accredited investor exception would have applied but his willfulness in using a false name, holding himself out to be a licensed insurance agent when his insurance agent license had been suspended. There were a few other things I think they were going to go with on the bill of particulars as material misrepresentations or omissions. But those – the willfulness there – went to whether he willfully held himself out to be something he wasn't, and that was a harder battle to fight."

Petitioner's attorney at the post-conviction hearing asked trial counsel whether he discussed his research with Petitioner prior to plea negotiations. Trial counsel stated that he did discuss his findings with Petitioner. Trial counsel stated that he did not believe that the Rutherford County charges were worth twenty years, but the Rutherford County trial was scheduled at the end of three trials. Originally, the Rutherford County trial had been set to be heard first, but Petitioner decided to exercise his right to have the trial judge recused on the eve of trial. The plea negotiations were at a standstill. Petitioner wanted probation, and the State was offering fifty years. Trial counsel's concern about the Rutherford County case was not as significant as Petitioner's charges for the pending trial in Davidson County for solicitation to have the prosecutors killed. Trial counsel stated that at that point they were discussing the ultimate settlement offer for the solicitation for murder charges with the trial counsel for those charges. They estimated that he would have received at least thirty-six years and more likely forty. The plea bargains in Davidson County and Rutherford County were a package deal. Anything that was done for Petitioner in Rutherford County would have affected the outcome with regard to Davidson County.

In addition, trial counsel informed Petitioner that the third Rutherford County victim, Vicki Jacobs, was much more sympathetic. Trial counsel recalled that "her money was from the wrongful death of her daughter or her husband. . . . She was handicapped in some way. And she pretty well lost her life savings." With regard to Vicki Jacobs, trial counsel believed that her case was the State's main focus. He testified to the following:

The State's thesis was that the vast majority of this money – and we had an accountant going through it too. I think probably better than they had and it unfortunately corroborated their – their position.

But the accountant had gone through it and it showed that her in-flows come in at a time when he had $93,000 in the bank. He then spends a quarter of a million dollars on various things which include Harley Davidsons, boats, trailer insurance, jewelry and some money which was going to the companies EHTS and RTG, which were the subject companies of this indictment but which became the company that Vickie Jacobs was investing in.

So some money – some – some amount of money clearly went to those companies. It wasn't . . . nearly $300,000. Unfortunately, I knew from here from examining the hard drives that they had that those investments were recorded and they were recorded as loans from Robert Mendenhall not as investments of Vickie Jacobs' money.

Trial counsel testified that from all the evidence, there was no way to competently show that the $300,000 given to Petitioner by Vickie Jacobs was invested in the company.

Trial counsel did not think that the State had a very good case with regard to the theft charges. For this reason, trial counsel stated that he did not believe the Rutherford County charges standing on their own were worth a twenty-year sentence. Trial counsel did discuss this analysis with Petitioner. Trial counsel told Petitioner in the Fall of 2006 that a trial was his best chance for a victory. However, by the time they got to the actual guilty plea in February 2007, the Rutherford County charges were part of a larger guilty plea deal.

When asked about witnesses Petitioner alleged should have been called, trial counsel testified that he contacted Will Pruitt. Trial counsel informed Mr. Pruitt that Petitioner had been using a false name, that he had lost his insurance license, and that Ms. Jacobs had made a $300,000 investment in the company. Mr. Pruitt was unaware of any of this information. He stated that he was under the impression that Petitioner had been keeping the company afloat through personal loans. In trial counsel's words, at that point, Mr. Pruitt "shut down" on him. Later Mr. Pruitt called trial counsel back and asked him to ask Petitioner's brother to stop threatening him and his family. Mr. Pruitt then made it clear that if he came to Tennessee to testify he would do everything he could to make sure that Petitioner ended up in prison.

-4-

Trial counsel also considered calling Petitioner's brother, Mark Mendenhall as a witness. However, upon mock cross-examination trial counsel discovered that Mr. Mendenhall thought that Petitioner had changed his name to honor the family as opposed to avoid child support obligations or avoid his insurance license suspension. Mr. Mendenhall also did not believe Petitioner had any prior convictions due to the fact that he was under the impression that Petitioner had won on appeal. Finally, Mr. Mendenhall did not know that Petitioner had accepted $300,000 in investment money from Ms. Jacobs. Mr. Mendenhall told trial counsel that Petitioner had been making personal loans to the company.

Petitioner also told trial counsel to talk to Andy Yurcho, who purports to be a securities lawyer. Trial counsel called Mr. Yurcho numerous times, but he never received a call back from Mr. Yurcho. In addition, trial counsel "googled" Mr. Yurcho and discovered that he is known on the internet as a Vietnam veteran imposter.

Other than these three witnesses, who had proven to be unhelpful, trial counsel was unaware of any other witnesses who could potentially offer favorable testimony.

Petitioner also alleged in his petition that trial counsel had a professional relationship with one of the prosecutors, Mary Griffin, such that it caused a conflict in his representation. Trial counsel acknowledged that he and Ms. Griffin were at the Public Defender's Office at the same time. However, he denied any conflicts in his representation of Petitioner. He stated that there were roughly thirty-five assistant public defenders, and he had never worked with Ms. Griffin on a case. In addition, he stated that he had never socialized with her other than at large, office gatherings.

Trial counsel testified that while he was representing Petitioner he discovered that the district attorney had tape recordings of Petitioner attempting to have the prosecutors murdered. The district attorney refused to give trial counsel the tapes because the prosecutor contended that the recordings had nothing to do with the securities cases for which trial counsel was representing Petitioner. Trial counsel who was representing Petitioner on the solicitation for murder charges would not give trial counsel the tapes unless Petitioner allowed him based on a waiver of attorney-client confidentiality. Petitioner refused trial counsel's request to get the tapes from trial counsel representing Petitioner on the murder charges. Trial counsel was unable to get access to the recordings until they were made public record in a pleading filed by the State.

After Petitioner was believed responsible for a threat against Ms. Griffin's life, trial counsel and Petitioner had extensive discussions concerning her involvement in the case as prosecutor. Although Petitioner could have had her recused because of the threat on her life, they determined that it was preferable to have her for tactical reasons. Ms. Griffin appeared

to be the most lenient prosecutor they were dealing with at the time. In addition, trial counsel was of the opinion that the trial judge slated to hear the case in Davidson County would allow evidence in that Petitioner attempted to have the prosecutors murdered as guilty knowledge evidence. However, if the prosecutors were still on the case, this evidence could not be presented. Trial counsel also believed that the prosecutor who would potentially take Ms. Griffin's place was significantly tougher. Trial counsel presented this information to Petitioner, but he left the decision up to Petitioner. They discussed this issue multiple times leading up to trial. On the eve of trial, according to trial counsel, Petitioner asked to have the prosecutors recused. Trial counsel told Petitioner he would draw up the documents and Petitioner could file the motion pro se. Trial counsel stated that he would not sign them as his attorney because he considered the motion merely an attempt to delay trial.

Also on the eve of trial in Rutherford County, Judge Ash discovered that he had a connection with one of the victims. Trial counsel came to the jail and consulted with Petitioner regarding a request for Judge Ash's recusal. Trial counsel believed that they had obtained several fair rulings from Judge Ash and wanted to stay with him. This was borne out by the fact that in Davidson County the trial judge had made similar evidentiary rulings with the opposite, not as favorable result. However, in the end, Petitioner requested that Judge Ash recuse himself, thus delaying trial.

Throughout the negotiations, Petitioner wanted probation on all his charges. The State was offering fifty years. At some point, Petitioner gave trial counsel authority to convey a thirty-year offer. The State replied that thirty would not work but that thirty was progress. Trial counsel returned to Petitioner and suggested they ask for forty. Petitioner told him that he would not accept forty and that he should receive probation. Therefore, trial counsel stopped negotiating with the State. A few days before the Davidson County trial was set to begin, Petitioner asked trial counsel about the status of negotiations. Trial counsel informed Petitioner that he was preparing for trial and not negotiating because Petitioner had not given him authority to negotiate. Trial counsel stated that Petitioner became very angry with him. Petitioner asked him about the forty-year offer. Trial counsel replied that he had not been given authority to pursue a forty-year offer. Petitioner began to yell at trial counsel and told him that this was another example of his gross incompetence. Petitioner requested that trial counsel present the forty-year offer. Trial counsel reminded Petitioner that if he presented forty years, the State would never offer below that number during the negotiations. Petitioner told trial counsel to present forty years. After presenting the forty-year offer, the assistant district attorney called trial counsel to let him know that the forty-year offer was acceptable. Trial counsel and trial counsel on the solicitation for murder charges met with Petitioner that weekend to go over the plea petition.

Petitioner entered his guilty pleas in Davidson County before he entered his pleas in Rutherford County. Trial counsel was certain that Petitioner fully understood the proceedings at the plea hearing. Trial counsel stated that he was certain that Petitioner knew what he was doing when he pled guilty. Trial counsel also stated that he believed that it was Petitioner's intention to file a petition for post-conviction relief immediately after pleading guilty. Trial counsel told Petitioner that a jury trial and appeal would have more chance of success than pleading guilty and filing a post-conviction.

On Sunday, when trial counsel from this case and the solicitation for murder case were going over the plea petition, Petitioner suddenly had a change of heart and did not want to accept the forty-year offer. Both trial counsel told Petitioner that the agreement had to be signed that day, or it would be off the table. If that occurred, Petitioner would definitely be going to trial. They also told Petitioner that he could sign the plea petition that day, and back out of the plea on Monday morning in the trial court if that is what he wanted. Trial counsel advised him to sign the plea petition on Sunday so that he could keep his options open on Monday morning for either going to trial or entering a guilty plea. When he left Petitioner on Sunday, trial counsel was not sure what Petitioner was going to do on Monday at the trial court. During their discussions, Petitioner had stated several things including that he was going to fire trial counsel, have the trial judge recused, or plead guilty. When they got to court on Monday, Petitioner pled guilty. When he entered the plea he stated that he was entering the plea voluntarily.

Trial counsel testified that he was of the opinion that because Petitioner pled guilty in Davidson County to forty years he still could have backed out of the plea agreement pertaining to Rutherford County. Trial counsel stated that the only thing he thought could have happened is that they could have gone to trial and the trial court could have imposed consecutive sentences.

Petitioner also testified at the evidentiary hearing. Petitioner testified that he understood at the time he entered his guilty plea that it was a package deal regarding his charges in Davidson County and Rutherford County. However, he stated that he had not been aware of the restitution requirements with the Rutherford County plea. Petitioner testified that when the plea negotiations began he was told that the State was going for sixty years. Later he was told fifty years. Petitioner stated that he told his trial counsel that he wanted probation and asked if that would be a possibility. They discussed asking the State for thirty years, and trial counsel returned from negotiations to tell Petitioner that the State would not accept that offer. Trial counsel then began to prepare for trial. However, when the forty-year offer came from the State, Petitioner accepted the offer at the behest of his trial counsel and brother. Petitioner stated that he did not believe that trial counsel was ready for trial. Petitioner stated that he felt he had no real choice but to take the plea because trial

counsel was not ready. He testified that he understood that he could not be forced to accept the plea. Petitioner testified that he told the trial court he was satisfied with trial counsel's representation at the guilty plea hearing because he had entered his guilty plea in Davidson County. Petitioner admitted that he had told the trial court when he entered his guilty pleas that trial counsel had explained the indictments to him, explored all the facts and circumstances of the case, and that he was satisfied with trial counsel. He stated that he believed trial counsel did the best he could, but Petitioner believed that there should have been more effort put in to the case and more securities knowledge.

Petitioner stated that although he told the trial court he was satisfied with trial counsel's representation, after entering the plea he became aware that trial counsel had not interviewed all his witnesses. Petitioner was aware that his plea agreement for twenty years in Rutherford County was less time than the maximum sentence he was subject to had he gone to trial. Petitioner also thought that he was locked into pleading guilty in Rutherford County because he had already pled guilty in Davidson County. When presented with the fact that at the guilty plea hearing the trial court specifically informed Petitioner that he could refuse the guilty plea and go to trial, Petitioner stated that he believed that he had to plead guilty because of the package deal.

Petitioner admitted that trial counsel told him that he had a triable case in Rutherford County. However, when new charges occurred in Davidson County involving threats to the prosecutors, trying the Petitioner's cases in Rutherford and Davidson counties became difficult. Petitioner and trial counsel discussed the fact that he was now facing three trials, two for the securities charges and one for the solicitation to murder charges. Petitioner testified that trial counsel drew a diagram and told him that it was unlikely that he could win all three trials. At that point, Petitioner began to look at the three pending cases as a whole. Petitioner stated that he decided to take the plea offer of forty years instead of attempting to win three separate trials. He accepted the offer, because he believed he would have to win all three trials to "beat the offer."

Petitioner disagreed with trial counsel's choice of defense for trial. Trial counsel told Petitioner that he was basing the defense on mistakes made by the prosecution. Petitioner believed that the defense should have been based on the facts. Petitioner believed that the defense should have been based upon the fact that he was dealing with investors who had a certain degree of expertise with regard to financial investments. Petitioner stated that he wanted trial counsel to tell the jury that the real seller of the securities was the people down in Florida. Petitioner also wanted trial counsel to show that Petitioner had lost money in the business operation with regard to the allegations that he had stolen money from the victims in Rutherford County.

Petitioner denied that trial counsel ever discussed the fact that Ms. Griffin would likely be a more lenient prosecutor as a reason for not asking for her recusal. He testified that trial counsel told him that asking for her removal would start a war and they were not ready for a war. Petitioner stated that he believed Ms. Griffin should have been asked to be removed from the case. Petitioner also believed that trial counsel's prior professional association with Ms. Griffin hindered trial counsel's ability to represent him. Petitioner testified that trial counsel told him that Ms. Griffin was a friend of his and his wife's.

On October 6, 2008, the post-conviction court denied the petition. Petitioner filed a timely notice of appeal.

## ANALYSIS

On appeal, Petitioner argues that the post-conviction court erred in concluding that Petitioner received effective assistance of counsel and that he entered his guilty plea knowingly, intelligently and voluntarily. The post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. *See State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). During our review of the issue raised, we will afford those findings of fact the weight of a jury verdict, and this Court is bound by the court's findings unless the evidence in the record preponderates against those findings. *See Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997); *Alley v. State*, 958 S.W.2d 138, 147 (Tenn. Crim. App. 1997). This Court may not reweigh or re-evaluate the evidence, nor substitute its inferences for those drawn by the post-conviction court. *See State v. Honeycutt*, 54 S.W.3d 762, 766 (Tenn. 2001). However, the post-conviction court's conclusions of law are reviewed under a purely de novo standard with no presumption of correctness. *See Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001).

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, the petitioner bears the burden of showing that (a) the services rendered by trial counsel were deficient and (b) that the deficient performance was prejudicial. *See Powers v. State*, 942 S.W.2d 551, 558 (Tenn. Crim. App. 1996). In order to demonstrate deficient performance, the petitioner must show that the services rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). "Because a petitioner must establish both prongs of the test to prevail on a claim of ineffective assistance of counsel, failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." *Henley*, 960 S.W.2d at 580.

As noted above, this Court will afford the post-conviction court's factual findings a presumption of correctness, rendering them conclusive on appeal unless the record

preponderates against the court's findings. *See id.* at 578. However, our supreme court has "determined that issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact . . . ; thus, [appellate] review of [these issues] is de novo" with no presumption of correctness. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999).

Furthermore, on claims of ineffective assistance of counsel, the petitioner is not entitled to the benefit of hindsight. *See Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). This Court may not second-guess a reasonably-based trial strategy, and we cannot grant relief based on a sound, but unsuccessful, tactical decision made during the course of the proceedings. *See id.* However, such deference to the tactical decisions of counsel applies only if counsel makes those decisions after adequate preparation for the case. *See Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Once a guilty plea has been entered, effectiveness of counsel is relevant only to the extent that it affects the voluntariness of the plea. In this respect, such claims of ineffective assistance necessarily implicate the principle that guilty pleas be voluntarily and intelligently made. *See Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (citing *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). As stated above, in order to successfully challenge the effectiveness of counsel, the petitioner must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *See Baxter*, 523 S.W.2d at 936. Under *Strickland v. Washington*, 466 U.S. 668, 694 (1984), the petitioner must establish: (1) deficient representation; and (2) prejudice resulting from the deficiency. However, in the context of a guilty plea, to satisfy the second prong of *Strickland*, the petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59; *see also Walton v. State*, 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997).

When analyzing a guilty plea, we look to the federal standard announced in *Boykin v. Alabama*, 395 U.S. 238 (1969), and the State standard set out in *State v. Mackey*, 553 S.W.2d 337 (Tenn. 1977). *State v. Pettus*, 986 S.W.2d 540, 542 (Tenn. 1999). In *Boykin*, the United States Supreme Court held that there must be an affirmative showing in the trial court that a guilty plea was voluntarily and knowingly given before it can be accepted. *Boykin*, 395 U.S. at 242. Similarly, our Tennessee Supreme Court in *Mackey* required an affirmative showing of a voluntary and knowledgeable guilty plea, namely, that the defendant has been made aware of the significant consequences of such a plea. *Pettus*, 986 S.W.2d at 542.

A plea is not "voluntary" if it results from ignorance, misunderstanding, coercion, inducements, or threats. *Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993). The trial

court must determine if the guilty plea is "knowing" by questioning the defendant to make sure he fully understands the plea and its consequences. *Pettus*, 986 S.W.2d at 542; *Blankenship*, 858 S.W.2d at 904.

Initially, we point out that the transcript of the guilty plea hearing has not been included in the record before this Court. Petitioner has included a transcript of the guilty plea as an appendix to his brief, however, an item attached to a party's brief is not properly before this Court as part of the record on appeal. *See* Tenn. R. App. P. 24; *Carney v. State*, No. M2006-01740-CCA-R3-CO, 2007 WL 3038011, at *4 (Tenn. Crim. App., at Nashville, Oct. 17, 2007) (stating that "documents attached to an appellate brief but not included in the record on appeal cannot be considered by this court as part of the record on appeal" (internal citation omitted)); *State v. Matthews*, 805 S.W.2d 776, 783 (Tenn. Crim. App. 1990) (determining that transcripts attached to the appellant's brief were not considered by the court because they were not a part of the record). When a petitioner seeks appellate review he has a duty to prepare a record that conveys a fair, accurate and complete account of what happened with regard to the issues that form the basis of the appeal. *State v. Ballard*, 855 S.W.2d 557, 560 (Tenn. 1993); *see* Tenn. R. App. P. 24(b). When an adequate record is not prepared on appeal, the reviewing court must presume that the trial court's rulings are supported by sufficient evidence. *State v. Oody*, 823 S.W.2d 554, 559 (Tenn. Crim. App. 1991). Therefore, our review of the issues presented is limited to the evidence presented at the post-conviction evidentiary hearing. *Shirley Mason v. State*, No. M2004-00392-CCA-R3-PC, 2005 WL 639128, at *4 (Tenn. Crim. App., at Nashville, Mar. 15, 2005) (stating that the petitioner's failure to include a transcript of the guilty plea hearing on appeal restricted this Court's review to the evidence presented at the post-conviction hearing).

On appeal, Petitioner argues that trial counsel was ineffective because (a) trial counsel "failed to adequately prepare a defense based upon the applicable law"; (b) trial counsel became focused on Petitioner's pending charges for solicitation for murder and his preparation regarding the Rutherford County charges suffered as a result; and (c) the trial strategy adopted by trial counsel was a "passive strategy" and allowed the prosecutors whom were the target of Petitioner's solicitation for murder charges to remain on the case. He also argues that his guilty plea was not entered into voluntarily because he and trial counsel had frequent disagreements. Petitioner argues that when it was time to choose whether to go to trial or plead guilty, Petitioner did not believe that trial counsel was ready for trial, so he felt compelled to plead guilty.

We conclude that the evidence presented at the post-conviction hearing does not preponderate against the ruling of the post-conviction court. Trial counsel testified that he spent many hours educating himself about securities law. He also stated that he researched Petitioner's contention that the victims were "qualified investors" and therefore not subject

to the same securities requirements. Trial counsel concluded that Petitioner's actions were not exempt from the requirements as a result of his research. In addition, Petitioner raised the question as to whether he had sold the instruments "willfully" as required by the statute. To support this argument, Petitioner cites to this Court's interpretation of "willfully" from the statute in question set out in *State v. Michael Casper*, No. M2006-02538-CCA-R3-CD, 2008 WL 2648954, (Tenn. Crim. App., at Nashville, Jul. 3, 2008) *appl. to app. granted*, (Tenn. Dec. 22, 2008). In *Michael Casper*, this Court stated:

> [W]e believe the legislature must have intended that "willfully violate" means something more than simply intentionally selling securities without properly registering as a broker-dealer under [Tennessee Code Annotated] section 48-2-109. . . . [W]e are persuaded that this distinction between criminal and non-criminal offenders means that the legislature intended only to criminalize the selling of securities by an unregistered broker-dealer when the person selling the securities *is aware that his or her conduct is prohibited* by Tennessee Code Annotated section 48-2-109, and yet *nevertheless intentionally sells the security knowing he or she is violating the law*.

*Michael Casper*, 2008 WL 2648954, at *10 (emphasis added). However, since the instant case was heard by this Court, our supreme court has reversed this Court's analysis of the meaning of "willfully" in the statute. *State v. Michael Casper*, ___ S.W.3d ___, No.M2006-02538-SC-R11-CD, 2009 WL 3681854, at * 14-16 (Tenn. Nov. 6, 2009). With regard to the defendant in *Michael Casper*, with strikingly similar facts, our supreme court stated, "The Defendant's claim that he believed he did not need to register as a broker-dealer or broker-dealer agent under section 48-2-109(a) because he understood the PhyMed securities to be exempt from registration under section 48-2-104(a) is no defense." *Id.* at *16. Therefore, the current law does not support Petitioner's argument that trial counsel was ineffective with regard to his analysis of the law in question.

Finally, Petitioner argues that trial counsel should have moved for the recusal of one of the prosecutors in his case because he alleges his attorney had a relationship to the prosecutor. Petitioner also alleges that his trial counsel was ineffective because his trial strategy was "passive".

Trial counsel testified that, contrary to Petitioner's testimony, he had no connections with Ms. Griffin, the prosecutor, other than a professional relationship while both were working at the public defender's office in an office of thirty-five individuals. He never worked directly on a case with her. Trial counsel stated that he had never socialized with her.

The post-conviction court found trial counsel's testimony credible. "[Q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact," and the post-conviction court's credibility determinations are conclusive on appeal unless the evidence preponderates against them. *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996). We find no evidence to preponderate against the findings of the trial court.

As to the strategy of defense counsel to pursue a "passive" defense, we consider this a reasonably-based trial strategy so long as counsel was adequately prepared for trial. The trial court found that counsel was adequately prepared and we can find no evidence to the contrary. This issue affords Petitioner no basis for relief.

We conclude that Petitioner has failed to meet the first prong of the *Strickland* requirement, that the services provided by trial counsel were deficient. The evidence presented does not preponderate against the trial court's conclusion that trial counsel afforded Petitioner effective assistance of counsel. In addition, Petitioner has been unable to prove that his guilty plea was entered involuntarily or unintelligently. The trial court concluded that the plea was entered voluntarily, and the evidence presented does not preponderate against this finding.

Therefore, these issues are without merit.

## <u>CONCLUSION</u>

For the foregoing reasons, we affirm the post-conviction court's denial of the petition.

_____
JERRY L. SMITH, JUDGE